IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

HEATHER ANNE BAHNER,,

    Plaintiff,

vs.

Case No. C2-04-848
Judge Edmund A. Sargus, Jr.
Magistrate Judge Mark R. Abel

AELITA SOFTWARE CORP.,

    Defendant.

## OPINION AND ORDER

This matter is before the Court on the Motion for Partial Summary Judgment filed by Plaintiff Heather Anne Bahner, and the Motion for Summary Judgment filed by Defendant, Aelita Software Corp.[1] For the reasons that follow, Plaintiff's Motion is denied with respect to her Equal Pay Act claim; Defendant's Motion is granted with respect to Plaintiff's Equal Pay Act claim. Plaintiff's remaining state law claims are dismissed without prejudice.

---

[1] The Court also notes that Defendant has a pending Motion for Judgment on the Pleadings. The issues raised in that Motion are contained in Defendant's later-filed Motion for Summary Judgment, and, following removal, the parties requested decisions with respect to the Motions for Summary Judgment only. Accordingly, Defendant's Motion for Judgment on the Pleadings (Doc. #7) will be denied as moot.

## I.

In this employment discrimination action, Plaintiff, Heather Anne Bahner ("Plaintiff"), has sued her former employer, Defendant, Aelita Software Corporation[2] ("Defendant" or "Aelita") alleging breach of contract and sex-based discrimination under Ohio law, and violations arising under the federal Equal Pay Act, 29 U.S.C. § 206(d)(1). The following facts are undisputed.

Aelita operated in Dublin, Ohio as a computer software company. At the time relevant to this case, Aelita employed approximately 70 individuals whose primary duties were to market software products throughout the United States. Aggie Haslup served as Vice President of Marketing for Aelita. Prior to her employment with Aelita, Haslup worked at a company called Frontstep. Haslup worked at Frontstep with Darin Bartik, a Director of Partner Marketing. Bartik held a Masters of Business Administration ("MBA") and had over five years experience in management and technology marketing in a similar company. During the course of her negotiations for employment with Aelita, Haslup indicated that she wanted Aelita to hire Bartik to work on her team. When Aelita approached Bartik about a position, he indicated that he would require a 20% increase in salary plus a bonus.[3]

Aelita hired Bartik as a Product Marketing Manager at a rate of $85,000 per year, with a 20% incentive bonus, plus an option to buy at a fixed price up to 7,500 shares in the company. Bartik began his employment with Aelita on June 23, 2003.

---

[2] Aelita subsequently became Quest Software Corporation.

[3] At the time of these negotiations, Bartik was earning $73,000 with his then-employer, plus a 20-25% annual bonus. (Bartik Aff., ¶ 3.)

In the Spring and Summer of 2003, Aelita advertised and began searching for another Product Marketing Manager for a system-administration product known as "InTrust." The position of Product Marketing Manager would require the successful candidate to create all of the materials necessary to market Aelita's system administration products, including InTrust.

Plaintiff, Heather Bahner, responded to Aelita's internet advertisement for the position. Betsy Bender, who was in charge of hiring for the position, subsequently contacted Plaintiff. At the time she applied for the position, Plaintiff lived near Austin, Texas. Prior to her application with Aelita, Plaintiff worked for Dell Computer where she worked until November, 2002. Plaintiff had not worked in the nine months since she left her position at Dell.

Aelita offered Plaintiff the position of Product Marketing Manger for the InTrust product. In a letter to Plaintiff dated August 1, 2003, Aelita explained that it was "providing this document to explain our intentions and to ensure we are in agreement on these matters. Upon your acceptance of these terms, you agree to begin employment on or before September 8, 2003." (Complaint, Exh. 1, at p.1.) The letter described the position and location and benefits. The letter also explained that Plaintiff would "be paid a base salary of **$65,000** plus an incentive plan. . . ." (*Id.* at p. 2)(emphasis in original). In addition, the letter indicated that Plaintiff would be offered the option to purchase up to 2,500 shares of stock at a fixed price. Granted on your start date vested equally over a four-year period. . . ." (*Id.*) Further, Aelita offered to pay Plaintiff $5,000 towards her moving expenses.

Aelita also offered to reimburse Plaintiff for the cost of two round-trip air fares to Austin, Texas to facilitate and assist Plaintiff with relocating to Ohio. Plaintiff never submitted an airfare receipt for reimbursement.

Plaintiff began her employment on September 8, 2003. Plaintiff's first task was to learn and understand the InTrust product and to produce written literature about the product, known as "white papers." In November, 2003, Aelita implemented a reorganization of the marketing department under the direction of Aggie Haslup, Vice President of Marketing. As part of that reorganization, overall responsibility for both marketing and management of the InTrust product was transferred to William Evans who then became Plaintiff's direct supervisor.

When Evans took over the InTrust product management, he realized that Plaintiff had not started the white papers, which was the first step in advancing InTrust to market. Evans assigned to Plaintiff specific tasks and corresponding deadlines for writing a white paper and preparing a presentation for prospective customers. Evans estimated that the presentation should have taken Plaintiff no more than two days to complete. Plaintiff took one month to complete the assignment, and required significant assistance and input from Evans. (Evans Aff. ¶¶7-8.) Plaintiff took substantial amounts of time beyond initial deadlines to develop the white paper, and told a co-worker, Darin Bartik, that she had never before written such a document. (Bartik Aff. ¶5.) Plaintiff submitted her draft of the white paper in January, 2004, which Evans substantially revised before publishing it.

In January 2004, Evans, Aggie Haslup and Joann Scavina met to review Plaintiff's work and progress. They decided to terminate Plaintiff's employment for the reasons that she missed deadlines and failed to accomplish her responsibilities as Product Marketing Manager. (Scavina Aff., ¶¶8-9; Evans Aff., ¶18.) On February 11, 2004, Evans and Scavina met with Plaintiff and terminated her employment.

Plaintiff alleges that the offer letter of employment extended to her by Aelita created a contract for the payment of $65,000, regardless of whether Plaintiff worked for Aelita for a year. She maintains that Aelita breached that contract by terminating her employment after five months without compensating her the entire $65,000.

Plaintiff also alleges that Aelita paid Darin Bartik, a male, $20,000 more than she was to receive, a 5% larger incentive bonus (based on his $20,000 higher rate of compensation), 5,000 more shares in stock options and additional benefits for the same job and identical work responsibilities. She contends that such discrepancy in pay discriminates against her on the basis of her gender. Aelita does not dispute that Bartik was paid more than Plaintiff. Moreover, Aelita agrees that Plaintiff and Bartik performed substantially similar work.

This action was originally brought in the Franklin County Court of Common Pleas on March 15, 2004 alleging breach of an employment contract, violation of the state Equal Pay Act, O.R.C. § 4111.17, and gender discrimination in violation of state law, O.R.C. §§ 4112.02(A) & 4112.99. Plaintiff filed a motion for partial summary judgment on her breach of contract claim. Defendant filed its opposition and, at the same time, sought summary judgment on each of Plaintiff's claims. When Plaintiff responded to Defendant's motion, she moved to amend the Complaint to include a claim for a violation of the federal Equal Pay Act, 29 U.S.C. § 206(d)(1). In response, Defendant removed the case pursuant to the provisions of 28 U.S.C. § 1441(b), invoking the Court's original jurisdiction under 28 U.S.C. § 1131.[4] The parties subsequently filed

---

[4] Plaintiff moved the Court for remand. By Report and Recommendation of the Magistrate Judge dated November 12, 2004, the Court denied that request. Neither party objected to the Report and Recommendation.

supplemental briefs in support or opposition of their motions for summary judgment.[5] The motions are now fully briefed and ready for disposition.

## II.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993). To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *accord Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970); *see*

---

[5] With her Supplemental Memorandum, Plaintiff offers the resume and offer letter of Elizabeth Carpenter, an employee hired after Plaintiff into a different position, as further support of the claims under the Ohio and federal Equal Pay Act. Carpenter, however, was not hired into the same position as Plaintiff and did not possess the level of skill, expertise or education as the purported compartor, Darin Bartik. As such, the supplemental evidence related to Carpenter does not advance the claims.

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (stating that the court must draw all reasonable inferences in favor of the nonmoving party and must refrain from making credibility determinations or weighing evidence). In responding to a motion for summary judgment, however, the nonmoving party "may not rest upon its mere allegations . . . but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Celotex*, 477 U.S. at 324; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). Furthermore, the existence of a mere scintilla of evidence in support of the nonmoving party's position will not be sufficient; there must be evidence on which the jury reasonably could find for the nonmoving party. *Anderson*, 477 U.S. at 251; *see Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Matsushita*, 475 U.S. at 587-88 (finding reliance upon mere allegations, conjecture, or implausible inferences to be insufficient to survive summary judgment).

### III.

**A.     Equal Pay Act**

The parties have filed Cross-Motions for Summary Judgment on Plaintiff's Equal Pay Act claims under the Ohio Equal Pay Act, O.R.C. § 4111.17, and the federal analog, 29 U.S.C. § 206(d)(1). Claims brought pursuant to the Ohio Equal Pay Act are subject to the same standards as are applied under the federal Act. *Creech v. Ohio Cas. Ins. Co.*, 944 F. Supp. 1347, 1353 (S.D. Ohio 1996)(citing *Stone v. Greater Cleveland Regional Transit Authority*, 92 Ohio App.3d 373, 383, 635 N.E.2d 1281 (1993)). Thus, the Court addresses the claims in tandem.[6]

---

[6]     Aelita first maintains that Plaintiff is exempt under the Equal Pay Act as an administrative and professional employee. The Court rejects that argument. Because the Equal Pay Act is a part of the Fair Labor Standards Act, 29 U.S.C. 201, *et seq.* ("FLSA"), it has the same basic coverage as the FLSA with two principal exceptions: (1) the Equal Pay Act applies to executive, administrative, and professional employees who are normally exempted from the FLSA for most purposes by section

The Equal Pay Act prohibits sex discrimination and provides as follows:

No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (I) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: Provided, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.

29 U.S.C. § 206(d)(1).[7]

In order to establish a *prima facie* case under the Equal Pay Act, Plaintiff must show that Aelita paid different wages to male employees "for equal work on jobs the performance of which require[d] equal skill, effort, and responsibility, and which [were] performed under similar

---

13(a)(1) of that statute. See 29 C.F.R. § 1620.1

[7] The Ohio Equal Pay Act provides in pertinent part:

(A) No employer, including the state and political subdivisions thereof, shall discriminate in the payment of wages on the basis of race, color, religion, sex, age, national origin, or ancestry by paying wages to any employee at a rate less than the rate at which the employer pays wages to another employee for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar conditions.

(B) Nothing in this section prohibits an employer from paying wages to one employee at a rate different from that at which the employer pays another employee for the performance of equal work under similar conditions on jobs requiring equal skill, effort, and responsibility, when the payment is made pursuant to any of the following:
    (1) A seniority system;
    (2) A merit system;
    (3) A system which measures earnings by the quantity or quality of production;
    (4) A wage rate differential determined by any factor other than race, color, religion, sex, age, national origin, or ancestry.

working conditions." *EEOC v. Romeo Community Schools*, 976 F.2d 985 (6th Cir.1992)(quoting *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974)).

Plaintiff has met the burden of establishing a *prima facie* case under the Equal Pay Act because the Aelita "paid different wages to an employee of the opposite sex for substantially equal work." *Timmer v. Mich. Dep't of Commerce*, 104 F.3d 833, 843 (6th Cir.1997) (citing *Corning Glass Works*, 417 U.S. at 195). Aelita agrees that it paid Bartik a higher wage and that the two performed substantially the same work. "However, not all differences in pay for equal work constitute violations" of the Equal Pay Act. *Id*.

The burden therefore shifts to Aelita to demonstrate that one of four statutory affirmative defenses justifies the difference in pay. *Kovacevich v. Kent State Univ.*, 224 F.3d 806, 826 (6th Cir.2000). Aelita relies on the fourth affirmative defense, namely that a factor other than sex accounts for the wage differential. To be entitled to summary judgment, Aelita must therefore prove that there is no genuine issue as to whether the difference in pay is due to a factor other than sex. *Romeo Community Schoos*, 976 F.2d at 989. "[T]he employer must prove that 'sex provides no part of the basis for the wage differential'" in order to prevail on summary judgment. *Timmer*, 104 F.3d at 844 (quoting *Brennan v. Owensboro-Daviess County Hosp.*, 523 F.2d 1013, 1031 (6th Cir.1975)).

Aelita argues that sex did not factor into the reason that Bartik received a higher compensation package. Aelita maintains that the wage differential between Plaintiff and Bartik was based on the two individuals' relevant work experience, Bartik's prior successful working relationship with Haslup, the similarity in responsibilities in his work for his prior employer, his MBA, and the fact that he requested and negotiated a higher salary. Conversely, Plaintiff did not

bargain for a higher salary, did not have a MBA, and did not have a similar work experience to Bartik. (See First Haslup Aff., ¶ 5; Second Haslup Aff., ¶¶ 3-5; Scavina Aff., ¶¶ 2-5.)

The catch-all provision of the Equal Pay Act "does not include literally any other factor, but a factor that, at a minimum, was adopted for a legitimate business reason." *EEOC v. J.C. Penney Co., Inc.*, 843 F.2d 249, 253 (6th Cir.1988) (citation omitted). A wage differential based on education or experience is a factor other than sex for purposes of the Equal Pay Act. *Balmer v. HCA, Inc.*, – F.3d– , 2005 WL 2218414 (6th Cir. 2005); *Hutchins v. Int'l Bhd. of Teamsters*, 177 F.3d 1076, 1081 (8th Cir.1999). Consideration of a new employee's prior salary is allowed as long as the employer does not rely solely on prior salary to justify a pay disparity. *Balmer*, at *4 (citing *F.Irby v. Bittick*, 44 F.3d 949, 955 (11th Cir.1995)("If prior salary alone were a justification, the exception would swallow up the rule and inequality in pay among genders would be perpetuated.")).

Aelita has presented substantial evidence that the difference in the starting salaries of Plaintiff and Bartik was based upon a factor other than sex. Aelita's evidence, which Plaintiff cannot contradict, shows that Bartik requested a higher salary, had an advanced business degree,[8] and prior successful working relationships with his superiors and had more relevant industry experience than Plaintiff. The Court finds that Aelita has demonstrated that no genuine issue of fact exists as to whether the difference in pay is due to a factor other than sex. *See Balmer*, 2005

---

[8] Plaintiff maintains that Bartiks' MBA was not necessary to perform the job and therefore should not be considered by the Court. Plaintiff argues that possession of a skill not needed to perform the requirements of the job cannot be considered in making a determination regarding equality of skill. Aelita admits, however, that Bartik and Plaintiff were performing substantially the same job. Aelita has offered the fact that Bartik has an advance degree as part of its affirmative defense and as evidence that his education was a factor other than sex that justifies the wage differential.

WL 2218414 at *5; *Romeo Community Sch.*, 976 F.2d at 989. Aelita has therefore met its burden of proving an affirmative defense under the Equal Pay Act by a preponderance of the evidence. Aelita's Motion for Summary Judgment is therefore **GRANTED** as to Plaintiff's claim under the Equal Pay Act. Accordingly, Plaintiff's Motion for Summary Judgment on her Equal Pay Act claim is **DENIED**.

**B.**     **Remaining State Law Claims**

Plaintiff's remaining claims for breach of contract and gender-based discrimination in violation of O.R.C. §§ 4112.02(A) & 4112.99 arise purely under state law. Because the Court has disposed of Plaintiff's sole federal claim by this Order, the Court declines to exercise supplemental jurisdiction over her remaining state law claims pursuant to 28 U.S.C. § 1367(c)(3). Consequently, Plaintiff's state law claims are **DISMISSED** without prejudice. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966)("If the federal claims are dismissed before trial . . . the state claims should be dismissed as well."); *Brandenburg v. Housing Auth. of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001).

## IV.

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment is **DENIED**; Defendant's Motion for Summary Judgment is **GRANTED**. Defendant's Motion for Judgment on the Pleadings (Doc. #7) is **DENIED AS MOOT**. The remaining state law claims are **DENIED WITHOUT PREJUDICE**. The Clerk is directed to remove this case from the Court's pending cases and motions list.

**IT IS SO ORDERED.**

_9-30-2005_
**DATED**

EDMUND A. SARGUS, JR.
UNITED STATES DISTRICT JUDGE